# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON

(U.S. Courthouse, 1717 Pacific Avenue, Room 3100, Tacoma, WA 98402-3200  )

Ronald Satish Emrit,                                    )
    Plaintiff (Pro Se)                              )  **CV19 5984** BHS
                              )  C. A. No.: _____
        v.                                             )
                              )

Universal Music Group, Island            )
    Def Jam Group,                               )
    Estate of Shakir Stewart,                )
    & Rick Ross                                    )
    Defendants                                    )
                              )

```
                    FILED _____ LODGED
                         RECEIVED
                    CCT 15 2019
              CLERK U.S. DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON AT TACOMA
    BY                                    DEPUTY
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

COMES NOW, the plaintiff Ronald Satish Emrit, who is bringing forth this complaint against the four defendants seeking to assess joint and several liability whereby the four defendants will presumably seek to collect contribution and indemnity from each other through the filing of cross-claims.  As such, the plaintiff believes that all four defendants have committed substantial copyright infringement in which the defendants have used the same "original works of authorship" that the plaintiff has used in one of his songs copyrighted with the Library of Congress.

## I.) NATURE OF THE CASE

1

1.) Due to the serious nature of this lawsuit, the plaintiff respectfully requests that the magistrate judge and/or district judge assigned to this case allow the plaintiff to amend his complaint if and only if (iff) the magistrate judge and/or district judge assigned to this case issues an "Order to Show Cause (OSC)" and/or a Report and Recommendation (R&R) specifying that this case should be dismissed for failure to state a claim for which relief can be granted or leading to a 12(b)(6) motion to dismiss or summary judgment motion by the opposing party after having been served with the pleadings (summons and complaint).

2.) Because of the assertion that copyright infringement could be considered to be the tortious act of conversion given that intellectual property in the form of copyrighted songs can be considered to be chattel even if intangible or non-fungible goods, this complaint alleges that the four defendants have also committed conversion and trespass to chattels (whereby the chattel is intangible or non-fungible) in addition to copyright infringement (although not amounting to criminal copyright infringement).

3.) This complaint alleges that the four defendants have also committed the tortious interference with business relations in addition to the tortious interference with contracts given that the plaintiff has had contracts in place with Horus Music Video Distribution and TIDAL which were substantially affected by this copyright infringement.

4.) The theory of joint and several liability for all four of the defendants is premised upon the theory (espoused in agency and partnership) of vicarious liability or the doctrine of respondeat superior which involves the "scope of employment" analysis for key employees and independent contractors.

5.) Although the plaintiff has not officially signed a contract(s) with any of the four defendants/alleged tortfeasors, this complaint also involves the theory (in agency and partnership) of actual, apparent, express, and implied authority in which various employees of the four defendants are presumed to have the ability to bind the corporations for which they work to valid and enforceable contracts.

## II.) PARTIES TO THIS LITIGATION

6.) The plaintiff is an indigent and disabled resident and/or citizen of the state of Florida. He lives with his father and mother (who has Alzheimer's Disease) at the following address: 6655 38th Lane East, Sarasota, Florida 34243. He is currently visiting his sister Lisa Leahy at her address, i.e. 11207 Lincoln Avenue, Hagerstown, Maryland 21740. Pursuant to Rule 201 of the Federal Rules of Evidence (FRE), the court can take judicial notice that the plaintiff attended the University of Memphis in 1997 as a graduate student trying to obtain a Master's Degree in Science (M.S.) in the field of Biology. The plaintiff lived at 4291 Lake Arbor Drive at the Wyndridge Apartments in Hickory Hill, Tennessee and worked at the Memphis Animal Shelter which was then based on Tchulahoma Drive in Memphis, Tennessee.

7.) The first defendant is "doing business as" Universal Music Group (UMG) and is one of the three major record labels along with Sony Music Entertainment and Warner Music Group (WMG). The mailing address for the principal place of business (ppb) and/or "nerve center" of UMG is the following: 2220 Colorado Avenue in Santa Monica, California. One of the email addresses for UMG is RoyaltyHelp@umusic.com while another email address is umpg.royalty@umusic.com or communications@umusic.com.

8.) The second defendant is "doing business as" Island Def Jam Group which is a subsidiary of the parent corporation Universal Music Group (UMG), i.e. the first named defendant. The original CEO of Island Def Jam Group was Russell

Simmons, i.e. a mogul and entrepreneur who is now contemplating becoming a "flight risk" from prosecution in the state of New York (for alleged sexual assault) as he is trying to travel to Bali in Indonesia which has no extradition treaty with the United States. The mailing address for Island Def Jam Group is the following: Island Def Jam Music Group, Worldwide Plaza, 825 Eighth Avenue RM C2, New York, NY 10019-7472. The phone number for the Island Def Jam Group is (212) (333)-8000 and the fax number is (212) 333-7255

9.) The third defendant is the "Estate of Shakir Stewart" and its executor/administrator. Shakir Stewart was an agent and repertoire (A&R) of Island Def Jam Group that signed the recording artist Rick Ross to a record deal. Apparently, Shakir Stewart committed suicide years ago and is the decedent or testator of his estate. Shakir Stewart was an alumnus of Morehouse College. Pursuant to Rule 201 of the Federal Rules of Evidence (FRE), the court can take judicial notice that the plaintiff briefly attended Morehouse College in the spring semester of 1996.

10.) The fourth defendant is the recording artist better known as Rick Ross or "Rozay" who is a former correctional officer apparently from Albany, Georgia (although the plaintiff can not currently substantiate that claims at this time). Accordingly, the recording artist Rick Ross has been signed to Island Def Jam Group, i.e. a wholly owned subsidiary of Universal Music Group (UMG) although it is not known if Rick Ross is currently signed to Island Def Jam Group or Universal Music Group (UMG) through a "360 deal" or a "demo deal" with a controlled composition clause, cross-collateralization clause, and Minimum Delivery and Release Commitment (MDRC). The apparent agent, publicist, or manager of Rick Ross is a company "doing business as" (d/b/a) Mn2s with a principal place of business (ppb) or "nerve center" at the following address: Mn2s, 31 Northeast 17th St, Miami, Florida 33132. The phone number of this Miami location is +1 305 600 1752 and the email address is info@mn2s.com. Because the plaintiff can not serve process on the British location of Mn2s, it is not important for the plaintiff to list the British address for Mn2s, but the British mailing address for Mn2s is the following: Mn2s, **UK OFFICE**, The Ministry,

79-81 Borough Road, London SE1 1DN , and the phone number for this British location of Mn2s is the following: +44 207 378 7321.  The email address for both the Miami and British address of Mn2s is info@mn2s.com.

## III.) JURISDICTION AND VENUE

11.) According to Federal Rules of Civil Procedure 8(a)(1), Plaintiff is required to provide "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support."

12.) Because the court does not already have personal or subject matter jurisdiction over this issue, it is necessary to engage in a brief discussion of the court's jurisdiction so that the defendants can not move to dismiss this case based on procedural grounds involving a lack of proper jurisdiction.

13.) Pursuant to 28 U.S.C.A. Section 1332, the U.S. District Court for the Western District of Washington (as an Article III court) has jurisdiction over this matter because there is complete diversity of jurisdiction between the Plaintiff and the four defendants.

14.) As an Article III court, the U.S. District Court for the Western District of Washington also has subject matter jurisdiction over the present case at bar because this proceeding involves a discussion of federal copyright law including but not limited to Sonny Bono Copyright Term Extension Act (CTEA), Copyright Act of 1976, Audio Home Recording Act (AHRA), Digital Millennium Copyright Act (DMCA), and OCILLA.

15.) Venue in this jurisdiction is also proper pursuant to 28 U.S.C.A. Sections 1391 and 1400.

16.) Because the amount in controversy exceeds $75,000 (i.e. $250,000 is greater than $75,000), this court also has jurisdiction with regards to that particular issue.

## IV.) STATEMENT OF FACTS

17.) At some point in time during the month of July, 2019, the plaintiff (i.e. Ronald Satish Emrit) had been informed by his brother-in-law (i.e. Michael Leahy of Hagerstown, Maryland) that the recording artist Rick Ross had been using the same background beat in his song "Billionaire" (off of his "Skrilla" album) as the plaintiff uses in his song "Dilemma" off of the plaintiff's album "Welcome to Atlantis" distributed by Ditto Music of United Kingdom and previously distributed by Tunecore of Brooklyn, New York.

18.) The plaintiff's brother-in-law (i.e. Michael Leahy of Hagerstown, Maryland) was able to find out or discern that Rick Ross was using the same background beat (in his song "Billionaire") as the plaintiff uses in his song "Dilemma" by using an app called Shazam that the plaintiff's brother-in-law had on his smartphone (either an Apple, Samsung, or Android).

19.) The Shazam app apparently "listens to" a sound or recording and then immediately traces or "looks up" the origin of that recording and then shows the artwork of the recording artist, the song, and sometimes the album by the recording artist on which the song was placed.

## V.) COUNT ONE: COPYRIGHT INFRINGEMENT

20.) A copyright infringement action requires a plaintiff to prove (1) ownership of a valid copyright, and (2) actionable copying by the defendant of constituent elements of the work that are original. ***Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); Positive Black Talk Inc. v. Cash Money Records, Inc., 394 F.3d 357, 367 (5th Cir. 2004); R. Ready Productions, Inc. v. Cantrell, 85 F.Supp.2d 672, 682 (S.D. Tex. 2000)***.

21.) Ownership of a valid copyright is established by proving (i) the originality and copyrightability of the material, and (ii) compliance with the statutory formalities.

see ***Norma Ribbon & Trimming, Inc. v. Little, 51 F.3d 45, 47 (5th Cir. 1995);
Cantrell, 85 F.Supp.2d at 682***.  A timely obtained certificate of registration creates
a rebuttable presumption that a copyright is valid and that the registrant owns the
copyright.

22.) The Copyright Act defines the scope of copyright protection: "Copyright
protection subsists…in original works of authorship fixed in any tangible medium
of expression." **17 U.S.C. § 102(a) (emphasis added)**. Thus a work must be
original to the author in order to be protected.  *See **Feist Publications, 499 U.S. at
344*** ("Originality is a constitutionally mandated prerequisite for copyright
protection.") .

23.) The term "original" as used in copyright law simply means (i) that the work
was independently created by the author (as opposed to copied from other works),
and (ii) that it possesses at least some minimal degree of creativity. ***Feist
Publications, 499 U.S. at 351***.

24.) Courts employ three terms of art in analyzing allegations of unauthorized
copying: probative similarity, substantial similarity and striking similarity.  It is
tempting to view these terms as a sort of sliding scale indicating increasing degrees
of similarities between works, but to do so would be a mistake.  As explained
below, probative similarity and striking similarity are analytical tools to determine
whether factual copying has occurred, whereas substantial similarity is the test
used to determine whether factual copying, once established, is legally actionable.

25.) Not all factual copying is legally actionable as copyright infringement.  see ***Feist Publications, 499 U.S. at 364; Cantrell, 85 F.Supp.2d at 682***.

26.) To establish actionable copying a plaintiff must prove (i) the defendant factually copied the protected material, and (ii) that there is a "substantial similarity" between the two works. see ***Bridgmon v. Array Systems, 325 F.3d at 576*** ("The first question is whether the alleged infringer…actually used the copyrighted material in his own work.) (internal citation omitted).

27.) Factual copying can be proven by direct or circumstantial evidence.  see ***Positive Black Talk, 394 F.3d at 367-368***.  Direct evidence of copying is rare.

28.) Because there is typically no direct evidence of factual copying, copyright plaintiffs usually must rely upon circumstantial evidence to show factual copying.

29.) Circumstantial evidence may include either: (i) proof of access to the allegedly infringed work plus evidence of a "probative similarity" between the works; or (ii) in the absence of proof of access, evidence of a "striking similarity" between the works.

30.) A plaintiff may establish factual copying with evidence that (a.) the defendant had access to the copyrighted work prior to creation of the allegedly infringing work, and (b.) the two works are probatively similar to one another.  see ***Positive Black Talk, 394 F.3d at 368***.

31.) "Access" means that the creator of the allegedly infringing work had a "reasonable opportunity to view" (or hear) the allegedly infringed work. see ***Ferguson v. National Broadcasting Co., 584 F.2d 111, 113 (5th Cir. 1978)***.

32.) Importantly, because a finding of access cannot be based on speculation and conjecture, a bare possibility of access will not suffice. *Id*.

33.) In addition to demonstrating access, a plaintiff must prove the two works are probatively similar. see ***General Universal Systems v. Lee, 379 F.3d at 141-142***.

34.) Probative similarity "requires a showing that the works, when compared as a whole, are adequately similar to establish appropriation." *Id*. at 142.

35.) Thus, an inference of copying arises only after a plaintiff submits competent proof of (i) access to the allegedly infringed work, and (ii) probative similarity between the works. *Id*.; see ***Positive Black Talk, 394 F.3d at 368***.

36.) A court may consider expert testimony to determine whether two works are probatively similar. ***See Ferguson, 584 F.2d at 113***.

37.) Like probative similarity, "striking similarity" is simply an analytical tool for determining whether factual copying may be inferred from circumstantial evidence.

38.) The concept is that if the two works "are so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." ***Ferguson, 584 F.2d at 113***.

39.) Thus, whereas the probative similarity inquiry requires proof of access before an inference of factual copying may arise, the striking similarity inquiry does not.

40.) Only after factual copying is established does the analysis proceed to the second prong of the infringement inquiry, *e.g.*, whether the copying is legally actionable.

41.) The plaintiff argues that all four of the defendants in the present case at bar should be held liable for substantial copyright infringement because it can be shown that Rick Ross, his producers, and his record labels/distribution company have used the same background song in their song "Billionaire" (off of Rick Ross's "Skrilla" album) as the plaintiff has used in his song "Dilemma" (off of the plaintiff's album "Welcome to Atlantis" distributed by Ditto Music of the United Kingdom and initially by Tunecore of Brooklyn, New York).

## VI.) COUNT TWO: CONVERSION

42.) The using of a thing without the license of the owner or a wrongful sale of it is a conversion. see ***Clark v. Whitaker, 19 Conn. 319 (Conn. 1848)***.

43.) A legal action predicated on the tort of conversion may be maintained by persons having the immediate right to possession of the article converted. *see* ***Owens v. Andrews Bank & Trust Co., 265 S.C. 490 (S.C. 1975)***.

44.) A conversion may be committed by unreasonably withholding possession from one who has the right to it. The elements of conversion are: (a.) the plaintiff's ownership or right to possession of the property; (b.) the defendant's conversion by wrongful act inconsistent with the property rights of the plaintiff; and, (c.) damages. *see **Kasdan, Simonds, McIntyre, Epstein & Martin v. World Sav. & Loan Ass'n (In re Emery), 317 F.3d 1064 (9th Cir. Cal. 2003)***

45.) A person not in lawful possession of a chattel (non real property) may commit conversion by: (a.) intentionally dispossessing the lawful possessor of the chattel, (b.) intentionally using a chattel in his possession without authority so to use it, (c.) receiving a chattel pursuant to an unauthorized sale with intent to acquire for himself or for another a proprietary interest in it, (d.) disposing of a chattel by an unauthorized sale with intent to transfer a proprietary interest in it, or, (e.) refusing to surrender a chattel on demand to a person entitled to lawful possession.

*see **Baram v. Farugia, 606 F.2d 42 (3d Cir. Pa. 1979)***

46.) Conversion is an intentional tort. The intent that must be proven is the intent to exercise dominion and control over the plaintiff's property in a manner inconsistent with the plaintiff's rights.

47.) However, intent or purpose to do a wrong is not necessary to establish conversion, merely intent to seize the property. see ***Chem-Age Indus. v. Glover, 2002 SD 122 (S.D. 2002)***.

48.) Thus, even if the defendant thought he or she had rights to the property, if they were wrong and intentionally seized it, they have converted the property wrongfully.

49.) A conversion is usually proved in one of three ways: (a.) by tortious taking; (b.) by any use or appropriation of the use of the person in possession, indicating a claim of right in opposition to rights of the owner; or (c.) refusal to give up possession to the owner on demand. see ***Litzinger v. Estate of Litzinger (In re Litzinger), 340 B.R. 897 (B.A.P. 8th Cir. 2006)***

50.) Since the act must be knowingly done, neither negligence, active or passive, nor a breach of contract, even though it results in injury to, or loss of, specific property, constitutes a conversion.

51.) It follows therefore that mistake, good faith, and due care are ordinarily immaterial and cannot be defenses in an action for conversion. see ***Taylor v. Forte Hotels Int'l, 235 Cal. App. 3d 1119 (Cal. App. 4th Dist. 1991)***.

52.) This is important for the defendant to understand. If you knowingly take possession, that constitutes the tort even if you were wrong. It does not matter if you were negligent or if you felt you had a valid right to the property. It is not required to prove you wished to do wrong…only that you intentionally took possession and actually had no right to do so.

53.) Wrongful conversion applies only to personal property. Personal property consists of every kind of property that is not real. Thus, an action for conversion generally lies only with respect to personal property and real estate is not subject to conversion. see *Waldron v. Rotzler, 862 F. Supp. 763 (N.D.N.Y 1994)*.

54.) Further, personal property is the subject of conversion only if it is of a tangible nature or if it is tangible evidence of a title to intangible or real property.

55.) Money can be the subject of conversion if the money in question can be identified. *see Allen v. Gordon, 429 So. 2d 369 (Fla. Dist. Ct. App. 1st Dist. 1983)*

56.) The essence of a conversion is not the acquisition of property but the wrongful deprivation of that property from its true owner. see *Yaeger v. Magna Corp. (In re Magna Corp.), 2005 Bankr. LEXIS 1114 (Bankr. M.D.N.C. Mar. 14, 2005)*.

57.) And note that one who is lawfully in possession of property may nevertheless be liable for a conversion for exceeding the scope of authority for that lawful possession when the use seriously violates the true owner's right of control.

58.) To establish a conversion claim, a plaintiff must prove that: (a.) it had a possessory interest in the property, (b.) the defendants intentionally interfered with the plaintiff's possession, and (c.) the defendants' acts are the legal cause of the plaintiff's loss of property.

59.) The plaintiff argues that all four of the defendants in the present case at bar should be held liable for the tortious act of conversion because it can be shown that Rick Ross, his producers, and his record labels/distribution company have used the same background song in their song "Billionaire" (off of Rick Ross's "Skrilla" album) as the plaintiff has used in his song "Dilemma" (off of the plaintiff's album "Welcome to Atlantis" distributed by Ditto Music of the United Kingdom and initially by Tunecore of Brooklyn, New York).

## VII.) COUNT THREE: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

60.) In order to prove tortious interference with business relationship, most jurisdictions require that the following elements be satisfied: (a.) A valid business

14

relationship or business expectancy existed between the parties, (b.) The defendant had knowledge of the relationship or expectancy, (c.) The defendant intentionally coerced one of the parties to terminate the business relationship, breach a contract, or withhold a valid business expectancy, (d.) The defendant was not authorized to interfere with the parties' dealings, (e.) The defendant's interference resulted in damages to the plaintiff.

61.) The plaintiff argues that all four of the defendants in the present case at bar should be held liable for the tortious interference with business relations because it can be shown that Rick Ross, his producers, and his record labels/distribution company have used the same background song in their song "Billionaire" (off of Rick Ross's "Skrilla" album) as the plaintiff has used in his song "Dilemma" (off of the plaintiff's album "Welcome to Atlantis" distributed by Ditto Music of the United Kingdom and initially by Tunecore of Brooklyn, New York).

## VIII.) COUNT FOUR: TORTIOUS INTERFERENCE WITH CONTRACTS

62.) At common law, a defendant is liable to pay damages in tort for actions intended to interfere with the plaintiff's contractual relations with a third party.

63.) In an intentional interference claim, the burden is on the plaintiff to prove the elements of the claim rather than on the defendant to prove that its acts were justified.

64.) To prevail on the claim, plaintiff must prove four elements: (a.) that a valid contract existed, (b.) that defendant had knowledge of the contract, (c.) that defendant acted intentionally and improperly,  and (d.) that plaintiff was injured by the defendant's actions. see ***United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812, 551 N.E.2d 20 n. 6 (Mass. 1990)***.

65.) The plaintiff argues that all four of the defendants in the present case at bar should be held liable for the tortious interference with contracts because it can be shown that Rick Ross, his producers, and his record labels/distribution company have used the same background song in their song "Billionaire" (off of Rick Ross's "Skrilla" album) as the plaintiff has used in his song "Dilemma" (off of the plaintiff's album "Welcome to Atlantis" distributed by Ditto Music of the United Kingdom and initially by Tunecore of Brooklyn, New York).

## IX.) PRAYER FOR RELIEF

WHEREFORE, the plaintiff is requesting a remedy at law in the form of a judgment in the amount of $250,000 (two hundred and fifty thousand dollars). This remedy at law is appropriate when considering that the four defendants have committed substantial copyright infringement, conversion, and the tortious interference with business relations/contracts.  The plaintiff asserts that the four defendants are not protected by the Federal Tort Claims Act (FTCA) and/or the

Eleventh Amendment doctrine of sovereign immunity.  In asserting this "prayer for relief," the plaintiff states, avers, and alleges the following:

A.) The remedy at law in the form of a judgment in the amount of $250,000 (two hundred and fifty thousand dollars) would be appropriately considered to be punitive, compensatory, treble, actual, presumed, and special damages for the commission of substantial copyright infringement, conversion, and the tortious interference with business relations/contracts by all four of the defendants.

B.) The remedy at law in the form of a judgment in the amount of $250,000 (two hundred and fifty thousand dollars)  would also be considered to be expectation, reliance, restitution, incidental, and consequential damages for the defendant's commission of a material breach of contract if and only if (iff) the court in the present case at bar entertains the "legal fiction" that all four of the defendants should be held liable according to the common law of contracts "after-the-fact" if it is presumed that all four of the defendants were rightfully given the rights to sync licensing and other types of licensing and/or publishing administration for the plaintiff's song "Dilemma" which has an almost identical background beat as the song "Billionaire" recorded by Rick Ross off of his album "Skrilla."  The plaintiff could file a motion in limine in the present case at bar attaching the songs "Dilemma" by Go Go Satish/Satish Dat Beast and "Billionaire" by Rick Ross as

separate exhibits or the plaintiff could provide a CD or mp3 of the separate songs

during the discovery phase of trial which would involve depositions,

interrogatories, and affidavits.

C.) The plaintiff is also requesting the equitable remedy of an injunction or specific

performance mandating that the plaintiff Ronald Emrit be signed to a "360 deal"

with Island Def Jam Group and/or Universal Music Group (UMG) with a

controlled composition clause, cross-collateralization clause, and Minimum

Delivery and Release Commitment (MDRC), and certainly not a "demo deal."

> Respectfully submitted,

Ronald Satish Emrit

6655 38th Lane East

Sarasota, FL 34243

(301)537-8471

einsteinrockstar@hotmail.com

einsteinrockstar2@outlook.com